Joseph H. Harrington
United States Attorney
Eastern District of Washington
George J.C. Jacobs III
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 21 2018

SEAN F. McAVOY, CLERK
_____ DEPUTY
             WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JANET SUE ARNOLD<br>  (a/k/a "Nugget"),<br>DANIELLE CORINE MATA,<br>JENNIFER CHERI PRICHARD,<br>DAVID BARNES NAY, and<br>LISA MARIE COOPER,<br><br>Defendants. | SUPERSEDING INDICTMENT<br>4:18-CR-06044-EFS<br><br>Vio: 21 U.S.C. §§ 841(a)(1),<br>(b)(1)(C), (b)(2), 846<br>Conspiracy to Distribute and<br>Possess with Intent to<br>Distribute Controlled<br>Substances<br>(Count 1)<br><br>21 U.S.C. §§ 841(a)(1),<br>(b)(1)(C), (b)(2), 18 U.S.C. § 2<br>Distribution of Controlled<br>Substances<br>(Counts 2 - 65)<br><br>21 U.S.C. § 853<br>Forfeiture Allegations |

The Grand Jury charges:

GENERAL ALLEGATIONS

At all times relevant and material to this Indictment:

SUPERSEDING INDICTMENT – 1

1. Defendant JANET SUE ARNOLD a/k/a "Nugget" ("ARNOLD") owned and operated a medical clinic known as Desert Wind Family Practice ("DWFP"), located at 431 Wellsian Way, Richland, Washington 99352. DWFP was not licensed by the State of Washington as a pain management clinic.

2. Defendant ARNOLD was a licensed physician who held a Washington medical license and Drug Enforcement Agency ("DEA") registration number. As such, Defendant ARNOLD was authorized to prescribe controlled substances for legitimate medical purposes and in the usual course of professional practice.

3. An individual (identified herein by the initials "T.N.") acted as DWFP's receptionist until in or about March 2016. T.N. had no known medical background and was not licensed as any type of care provider by the State of Washington.

4. Beginning in or about March 2016, Defendant ARNOLD hired Defendant DANIELLE CORINE MATA ("MATA") to work as DWFP's receptionist and office manager. Defendant MATA worked at DWFP until on or about May 31, 2017, when the State of Washington summarily suspended Defendant ARNOLD's medical license. Defendant MATA was not licensed as any type of care provider by the State of Washington, and did not have a DEA registration number to prescribe controlled substances.

5. Beginning in or about November 2016, Defendant ARNOLD hired Defendant JENNIFER CHERI PRICHARD ("PRICHARD") to work at DWFP. Defendant PRICHARD was not licensed as any type of care provider by the State of Washington, and did not have a DEA registration number to prescribe controlled substances.

6. At an exact date unknown, but at least by in or about March 2016 and continuing through on or about May 3, 2017, Defendant ARNOLD would pre-sign blank prescriptions and provide pre-signed blank prescriptions to Defendants MATA and PRICHARD to provide to individuals seeking Schedule II and Schedule

SUPERSEDING INDICTMENT – 2

IV controlled substances. At various times, Defendants MATA and PRICHARD would meet with Defendant ARNOLD at off-site locations where Defendant ARNOLD would pre-sign blank prescription paper to provide to individuals seeking Schedule II and Schedule IV controlled substances.

7. At an exact date unknown, but at least by in or about March 2016 and continuing through on or about May 3, 2017, Defendant ARNOLD would allow Defendant MATA, even though Defendant MATA was not trained or legally authorized to do so, to fill in all the required prescription information on blank prescriptions pre-signed by Defendant ARNOLD – to include drug type, dosage, and quantity – and Defendant ARNOLD would also allow Defendant MATA to provide the prescriptions to customers or patients. Defendant ARNOLD would sometimes pre-sign blank prescriptions without even knowing the identities of the customer to whom the prescriptions would be issued or the nature or dosage of the drug to be prescribed.

8. Defendant DAVID BARNES NAY ("NAY") was Defendant MATA's brother-in-law. Defendant NAY used other individuals to obtain and fill prescriptions for controlled substances using prescriptions pre-signed by Defendant ARNOLD. Defendant NAY provided Defendant MATA with the name and other required information to use on the otherwise blank pre-signed prescriptions.

9. Defendant LISA MARIE COOPER ("COOPER") was a resident of Prosser, Washington. COOPER used other individuals to obtain and fill prescriptions for controlled substances using prescriptions pre-signed by Defendant ARNOLD.

10. The Controlled Substances Act, 21 U.S.C. § 841 et seq. ("CSA") governs the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it

SUPERSEDING INDICTMENT – 3

"unlawful for any person knowingly or intentionally … to manufacture, distribute, or dispense … a controlled substance."

11. The CSA defines a "controlled substance" as a drug or other substance that is included in one of five schedules – Schedules I, II, III, IV, or V – of Subchapter I, Part B of the Act. 21 U.S.C. § 802(6). Drugs or substances are placed into these schedules based on their potential for abuse, among other reasons.

12. "Schedule II" means that the drug or other substance has a currently accepted medical use with severe restrictions and has a high potential for abuse that can lead to severe psychological or physical dependence. 21 U.S.C. § 812(b)(2).

13. "Schedule III" means that the drug or other substance has a currently accepted medical use with a potential for abuse that is less than those listed in Schedule II, but can lead to moderate or low physical dependence or high psychological dependence. 21 U.S.C. § 812(b)(3).

14. "Schedule IV" means that the drug or other substance has a currently accepted medical use with a low potential for abuse relative to those listed in Schedule III and can lead to limited physical or psychological dependence. 21 U.S.C. § 812(b)(4).

15. "Fentanyl" is a generic name for a narcotic (opioid) analgesic. It is also sold as transdermal patches under the brand name Duragesic®. Transdermal fentanyl patches are designed to release a specific dose of fentanyl every hour for 72 hours (3 days). For example, a fentanyl 100mcg/hr patch will release 100mcg of fentanyl every hour for 72 hours. Fentanyl is classified under federal law as a Schedule II controlled substance. When legally prescribed for a legitimate medical purpose, fentanyl typically is used for the relief of moderate to severe long-term pain. Fentanyl can be extremely habit-forming. Fentanyl is to be prescribed only when medically required and is to be taken only in a manner prescribed by a doctor for a particular patient.

SUPERSEDING INDICTMENT – 4

16. "Oxycodone" is a generic name for a narcotic (opioid) analgesic. It is also sold under the brand name Roxicodone®. Oxycodone is classified under federal law as a Schedule II controlled substance. When legally prescribed for a legitimate medical purpose, oxycodone typically is used for the relief of moderate to severe short-term pain. Oxycodone can be extremely habit-forming. Oxycodone is to be prescribed only when medically required and is to be taken only in a manner prescribed by a doctor for a particular patient.

17. "Methadone" is a generic name for a narcotic (opioid) analgesic. It is also sold under the brand name Methadose®. Methadone is classified under federal law as a Schedule II controlled substance. When legally prescribed for a legitimate medical purpose, methadone typically is used for the treatment of withdrawal symptoms in patients addicted to heroin and other narcotic drugs. Methadone can also be used as a pain reliever as part of a drug addiction detoxification and maintenance program. Methadone can be extremely habit-forming. Methadone is to be prescribed only when medically required and is to be taken only in a manner prescribed by a doctor for a particular patient.

18. "Hydromorphone" is a generic name for a narcotic (opioid) analgesic. It is also sold under the brand name Dilaudid®. Hydromorphone is classified under federal law as a Schedule II controlled substance. When legally prescribed for a legitimate medical purpose, hydromorphone typically is used for the relief of moderate to severe short-term pain. Hydromorphone can be extremely habit-forming. Hydromorphone is to be prescribed only when medically required and is to be taken only in a manner prescribed by a doctor for a particular patient.

19. "Methylphenidate" is a generic name for a stimulant. It is also sold under the brand name Ritalin®. Methylphenidate is classified under federal law as a Schedule II controlled substance. When legally prescribed for a legitimate medical purpose, methylphenidate typically is used for the treatment of Attention Deficit /

SUPERSEDING INDICTMENT – 5

Hyperactivity Disorder (ADHD), Attention Deficit Disorder (ADD), and/or narcolepsy. Methylphenidate can be extremely habit-forming. Methylphenidate is to be prescribed only when medically required and is to be taken only in a manner prescribed by a doctor for a particular patient.

20. "Amphetamine mixture" is a generic name for a stimulant. It is also sold under the brand name Adderall®. Amphetamine mixture is classified under federal law as a Schedule II controlled substance. When legally prescribed for a legitimate medical purpose, amphetamine mixture typically is used for the treatment of Attention Deficit / Hyperactivity Disorder (ADHD) and/or narcolepsy. Amphetamine mixture can be extremely habit-forming. Amphetamine mixture is to be prescribed only when medically required and is to be taken only in a manner prescribed by a doctor for a particular patient.

21. "Carisoprodol" is a generic name for a muscle relaxer. It is sold under the brand name Soma®. Carisoprodol is classified under federal law as a Schedule IV controlled substance. When legally prescribed for a legitimate medical purpose, carisoprodol typically is used for the treatment of acute, skeletal muscle conditions such as pain or injury. Carisoprodol can be habit-forming. Carisoprodol is to be prescribed only when medically required and is to be taken only in a manner prescribed by a doctor for a particular patient.

22. "Alprazolam" is a generic name for a sedative (benzodiazepine). It is sold under the brand name Xanax®. Alprazolam is classified under federal law as a Schedule IV controlled substance. When legally prescribed for a legitimate medical purpose, alprazolam typically is used for the treatment of anxiety and panic disorders. Alprazolam can be habit-forming. Alprazolam is to be prescribed only when medically required and is to be taken only in a manner prescribed by a doctor for a particular patient.

SUPERSEDING INDICTMENT – 6

23. Pursuant to 21 U.S.C. § 822(b) and 21 C.F.R. § 290.1, the controlled substances listed in Schedules II, III, IV, and V can be dispensed or distributed only by prescriptions by a practitioner registered with the DEA for that purpose. The DEA, as authorized by the CSA, issues registration numbers to qualifying medical practitioners that allow them to issue prescriptions for Schedule II, III, IV, and V controlled substances. Accordingly, controlled substances, such as opioid pain medications, can be dispensed only pursuant to a valid prescription from a medical practitioner authorized by the DEA to distribute controlled substances. 21 C.F.R. § 1306.03.

24. The term "practitioner" means a physician, medical doctor, dentist, or other person licensed, registered, or otherwise permitted by the United States or the jurisdiction in which he or she practiced, to distribute or dispense a controlled substance in the course of professional practice.

25. Defendant ARNOLD was a medical doctor licensed by the State of Washington Medical Board and considered a "practitioner" within the meaning of the CSA.

26. Individual practitioners who, during times material to this Indictment, wanted to distribute or dispense controlled substances in the course of professional practice were required to register with the Attorney General of the United States ("Attorney General") before they were legally authorized to do so. Such individual practitioners were assigned a registration number by the DEA.

27. Defendant ARNOLD was registered with the Attorney General and DEA under registration number FA2884561.

28. Practitioners registered with the Attorney General were authorized under the CSA to write prescriptions for, or to otherwise dispense, Schedule II, III, IV, and V controlled substances, so long as they complied with the requirements of their registrations. 21 U.S.C. § 822(b). The CSA prohibited any person from

SUPERSEDING INDICTMENT – 7

knowingly and intentionally using a DEA registration number issued to another person in the course of distributing or dispensing a controlled substance.

29. For medical doctors, compliance with the terms of their registration meant that they could issue a prescription for a controlled substance to a patient only if the prescription was "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice." 21 C.F.R. § 1306.04(a). A doctor violates the CSA and Code of Federal Regulations if he or she issues a prescription for a controlled substance outside the usual course of professional medical practice and not for a legitimate medical purpose. Such knowing and intentional violations subjected the doctor to criminal liability under 21 U.S.C. § 841(a) and 21 C.F.R. § 1306.04(a).

30. Pursuant to 21 C.F.R. § 1306.05(a) all prescriptions for controlled substances are required to be dated as of, and signed on, the day when issued.

31. The practitioner must first determine that a prescription for a controlled substance is for a legitimate medical purpose; then, the practitioner may authorize an agent to prepare the prescription and must instruct the agent as to the required elements of the prescription. The CSA defines an "agent" as "an authorized person who acts on behalf of or at the direction of a manufacturer, distributor, or dispenser" 21 U.S.C. § 802(3). The practitioner signs the prescription only after reviewing the prescription for accuracy.

32. Pursuant to 21 C.F.R. § 1306.12, the refilling of a prescription for a Schedule II controlled substance is prohibited. However, a practitioner may issue multiple prescriptions authorizing a patient to receive a total of up to a 90-day supply of a Schedule II controlled substance if these and other conditions are met: (1) each separate prescription is issued for a legitimate medical purpose by a practitioner acting in the usual course of professional practice; (2) the practitioner provides written instructions on each prescription (other than the first prescription, if the

SUPERSEDING INDICTMENT – 8

prescribing practitioner intends for that prescription to be filled immediately) indicating the earliest date on which a pharmacy may fill each prescription; and (3) the practitioner concludes that providing the patient with multiple prescriptions in this manner does not create an undue risk of diversion or abuse. 21 C.F.R. § 1306.12(b)(1).

33. The term "dispense" meant to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner; it included the prescribing and administering of a controlled substance. The term "dispenser" meant a practitioner who so delivered a controlled substance to an ultimate user or research subject. 21 U.S.C. § 802(10).

34. The term "distribute," meant to deliver (other than by administering or dispensing) a controlled substance. The term "distributor" means a person who so delivers a controlled substance or a listed chemical. 21 U.S.C. § 802(11).

35. The term "doctor shopping" refers to the practice of a patient requesting care from multiple physicians without making efforts to coordinate care or informing the physicians of the other prescribing physicians in order to divert the drugs to others or feed their own addiction to certain prescription drugs by faking or exaggerating the extent of their true condition, or both.

36. Defendant ARNOLD distributed and dispensed, and caused to be distributed and dispensed, Schedule II and Schedule IV controlled substances that were not prescribed for a legitimate medical purpose and not in the usual course of professional practice in the following non-exhaustive manners:

  a. Conducting cursory, incomplete inadequate or no medical examination;

  b. Collecting and reviewing inadequate patient medical history and follow-up verifications;

SUPERSEDING INDICTMENT – 9

    c. Conducting insufficient dialogue with the patient regarding treatment options and risks and benefits of such treatments;

    d. Primarily treating patients with highly addictive controlled substances while failing to consider or prescribe other treatment options;

    e. Prescribing highly addictive controlled substances despite inadequate diagnostic testing;

    f. Prescribing highly addictive controlled substances to patients who complained of undocumented or uncorroborated physical ailments where lesser treatment options would be indicated;

    g. Failing to assess the risk of abuse for individual customers;

    h. Failing to monitor the patients' responses to the medication or compliance with medical usage;

    i. Failing to query the Prescription Monitoring Program;

    j. Failing to take a history of drug or alcohol abuse for individual patients;

    k. Increasing the dosages and strength of Schedule II controlled substances without justification;

    l. Failing to request records from prior providers or establishing why the purported patient changed providers;

    m. Routinely pre-signing blank prescriptions and giving the blank pre-signed prescriptions to her office manager, receptionist, and other non-medical personnel.

37. DWFP patients received prescriptions for Schedule II and Schedule IV Controlled Substances, often without meeting with Defendant ARNOLD. These patients would be charged $20 to pick up a prescription. Patients were charged $80 to $120 for an appointment with Defendant ARNOLD.

SUPERSEDING INDICTMENT – 10

38. Beginning in and around March 2016, and continuing through on or about May 3, 2017, Defendants ARNOLD, MATA, PRICHARD, NAY, and COOPER, worked together and with other individuals known and unknown to the Grand Jury to distribute, and possess with intent to distribute, large amounts of highly addictive prescription drugs in and around Richland, Washington.

## SPECIFIC ALLEGATIONS
## COUNT 1

39. Paragraphs 1 through 38 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

40. Beginning on or about August 14, 2015, and continuing through on or about May 31, 2017, in the Eastern District of Washington, the Defendants, JANET SUE ARNOLD a/k/a "Nugget," DANIELLE CORINE MATA, JENNIFER CHERI PRICHARD, DAVID BARNES NAY, and LISA MARIE COOPER, did knowingly and intentionally combine, conspire, confederate and agree together, with others known and unknown, to commit the following offenses:

    a)    to knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, quantities of controlled substances, including Fentanyl, Oxycodone, Methadone, Hydromorphone, Methylphenidate, Amphetamine mixture, all Schedule II controlled substances, and Carisoprodol and Alprazolam, all Schedule IV controlled substances, by issuing "prescriptions," and causing the issuing of "prescriptions," without a legitimate medical purpose and outside the usual course of professional practice, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), (b)(2), and 21 C.F.R. § 1306.04; and,

    b)    to knowingly and intentionally possess with intent to distribute and to dispense, without a legitimate medical purpose and outside the usual course of professional practice, quantities of controlled substances,

SUPERSEDING INDICTMENT – 11

including Fentanyl, Oxycodone, Methadone, Hydromorphone, Methylphenidate, Amphetamine mixture, all Schedule II controlled substances, and Carisoprodol and Alprazolam, all Schedule IV controlled substances, in violation of 21, U.S.C. § 841(a)(1), (b)(1)(C), (b)(2), and 21 C.F.R. § 1306.04;

All in violation of 21 U.S.C. § 846.

## COUNTS 2 - 65

41.   Paragraphs 1 – 16, 21, and 23 -38 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

42.   On or about the dates set forth below, in the Eastern District of Washington, the Defendants, JANET SUE ARNOLD a/k/a "Nugget," DANIELLE CORINE MATA, JENNIFER CHERI PRICHARD, DAVID BARNES NAY, and LISA MARIE COOPER, specified as to each count below, did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, a mixture and substance containing a detectable amount of a Schedule II controlled substance (Oxycodone, Fentanyl) and Schedule IV controlled substance (Carisoprodol), as listed below, by issuing "prescriptions" without a legitimate medical purpose and outside the usual course of professional practice, each of which constitutes a separate count of this Indictment:

| COUNT | Approximate Distribution Date | Defendant | Name on Prescription | Controlled Substance | Quantity |
|---|---|---|---|---|---|
| 2 | 10/9/2015 | ARNOLD | K.C. | Oxycodone 15mg | 30 pills |
| 3 | 2/1/2016 | ARNOLD | K.C. | Oxycodone 20mg | 60 pills |
| 4 | 2/17/2016 | ARNOLD, MATA | K.C. | Oxycodone 20mg | 90 pills |

SUPERSEDING INDICTMENT – 12

| 5 | 3/2/2016 | ARNOLD | K.C. | Oxycodone 20mg | 90 pills |
| 6 | 4/30/2016 | ARNOLD, MATA, COOPER | K.M | Oxycodone 15mg | 120 pills |
| 7 | 5/2/2016 | ARNOLD, MATA, NAY | N.L | Oxycodone 20mg | 60 pills |
| 8 | 5/26/2016 | ARNOLD, MATA, NAY | N.L. | Fentanyl 50mcg | 15 patches |
| 9 | 5/27/2016 | ARNOLD, MATA, NAY | R.I. | Oxycodone 10mg | 120 pills |
| 10 | 6/3/2016 | ARNOLD, MATA, COOPER | C.L. | Fentanyl 50mcg | 15 patches |
| 11 | 6/16/2016 | ARNOLD, MATA, NAY | R.I. | Oxycodone 20mg | 180 pills |
| 12 | 6/18/2016 | ARNOLD, MATA, COOPER | K.M | Fentanyl 75mcg | 15 patches |
| 13 | 6/18/2016 | ARNOLD, MATA, COOPER | K.M. | Oxycodone 10mg | 360 pills |
| 14 | 6/27/2016 | ARNOLD, MATA, NAY | R.S. | Oxycodone 10mg | 180 pills |
| 15 | 7/6/2016 | ARNOLD, MATA, COOPER | C.L. | Fentanyl 100mcg | 15 patches |
| 16 | 7/7/2016 | ARNOLD, MATA, NAY | C.S. | Fentanyl 50mcg | 15 patches |
| 17 | 7/19/2016 | ARNOLD, MATA, COOPER | K.M. | Oxycodone 20mg | 180 pills |

SUPERSEDING INDICTMENT – 13

| 18 | 8/9/2016 | ARNOLD, MATA, NAY | N.L. | Fentanyl 100mcg | 15 patches |
| 19 | 8/9/2016 | ARNOLD, MATA, NAY | N.L. | Oxycodone 20mg | 180 pills |
| 20 | 8/15/2016 | ARNOLD, MATA, NAY | K.Y. | Oxycodone 10mg | 120 pills |
| 21 | 8/18/2016 | ARNOLD, MATA, COOPER | K.M. | Oxycodone 30mg | 180 pills |
| 22 | 9/8/2016 | ARNOLD, MATA, NAY | R.S. | Fentanyl 50mcg | 15 patches |
| 23 | 9/19/2016 | ARNOLD, MATA, NAY | P.S. | Fentanyl 25mcg | 15 patches |
| 24 | 9/19/2016 | ARNOLD, MATA, NAY | P.S. | Oxycodone 15mg | 120 pills |
| 25 | 9/22/2016 | ARNOLD, MATA, NAY | R.I. | Fentanyl 100mcg | 15 patches |
| 26 | 10/7/2016 | ARNOLD | K.C. | Oxycodone 20mg | 240 pills |
| 27 | 10/7/2016 | ARNOLD, MATA, NAY | N.L. | Fentanyl 100mcg | 15 patches |
| 28 | 10/7/2016 | ARNOLD, MATA, NAY | N.L. | Oxycodone 20mg | 180 pills |
| 29 | 10/7/2016 | ARNOLD, MATA, PRICHARD | M.A. | Carisoprodol 350mg | 90 pills |
| 30 | 10/7/2016 | ARNOLD, MATA, PRICHARD | A.M. | Carisoprodol 350mg | 90 pills |

SUPERSEDING INDICTMENT – 14

| 31 | 10/18/2016 | ARNOLD, MATA, NAY | S.R. | Oxycodone 5mg | 120 pills |
| 32 | 10/18/2016 | ARNOLD, MATA, NAY | C.S. | Oxycodone 15mg | 180 pills |
| 33 | 10/18/2016 | ARNOLD, MATA, COOPER | K.M. | Fentanyl 100mcg | 15 patches |
| 34 | 10/20/2016 | ARNOLD, MATA, NAY | K.Y. | Fentanyl 75mcg | 15 patches |
| 35 | 10/27/2016 | ARNOLD, MATA, NAY | P.S. | Oxycodone 15mg | 120 pills |
| 36 | 10/27/2016 | ARNOLD, MATA, NAY | P.S. | Fentanyl 25mcg | 15 patches |
| 37 | 11/1/2016 | ARNOLD, MATA, NAY | S.R. | Oxycodone 10mg | 120 pills |
| 38 | 11/10/2016 | ARNOLD, MATA, NAY | N.L. | Oxycodone 20mg | 180 pills |
| 39 | 11/10/2016 | ARNOLD, MATA, NAY | N.L. | Fentanyl 100mcg | 15 patches |
| 40 | 11/14/2016 | ARNOLD, MATA, COOPER | C.L. | Oxycodone 30mg | 180 pills |
| 41 | 11/25/2016 | ARNOLD, MATA, NAY | S.R. | Oxycodone 15mg | 150 pills |
| 42 | 12/1/2016 | ARNOLD, MATA, NAY | P.S. | Fentanyl 50mcg | 15 patches |
| 43 | 12/1/2016 | ARNOLD, MATA, NAY | P.S. | Oxycodone 15mg | 120 pills |

SUPERSEDING INDICTMENT – 15

| 44 | 12/5/2016 | ARNOLD, MATA, PRICHARD | K.S. | Carisoprodol 350mg | 90 pills |
| 45 | 12/12/2016 | ARNOLD, MATA, NAY | R.S. | Oxycodone 15mg | 180 pills |
| 46 | 12/12/2016 | ARNOLD, MATA, NAY | S.R. | Oxycodone 15mg | 150 pills |
| 47 | 12/19/2016 | ARNOLD, MATA, PRICHARD | K.M. | Carisoprodol 350mg | 120 pills |
| 48 | 12/23/2016 | ARNOLD, MATA, NAY | K.Y. | Fentanyl 50mcg | 15 patches |
| 49 | 1/9/2017 | ARNOLD, MATA, NAY | R.I. | Fentanyl 100mcg | 15 patches |
| 50 | 1/20/2017 | ARNOLD, MATA, COOPER | C.L. | Fentanyl 100mcg | 15 patches |
| 51 | 1/31/2017 | ARNOLD, MATA, NAY | K.Y. | Oxycodone 15mg | 120 pills |
| 52 | 2/15/2017 | ARNOLD, MATA, NAY | R.I. | Fentanyl 100mcg | 15 patches |
| 53 | 3/3/2017 | ARNOLD, MATA, COOPER | C.L. | Oxycodone 30mg | 180 pills |
| 54 | 3/8/2017 | ARNOLD, MATA, NAY | C.S. | Fentanyl 75mcg | 15 patches |
| 55 | 3/9/2017 | ARNOLD, MATA, NAY | C.S. | Oxycodone 15mg | 180 pills |

SUPERSEDING INDICTMENT – 16

| 56 | 3/10/2017 | ARNOLD, MATA, PRICHARD, COOPER | C.C. | Fentanyl 100mcg | 15 patches |
|---|---|---|---|---|---|
| 57 | 3/22/2017 | ARNOLD, MATA, PRICHARD | K.C. | Oxycodone 30mg | 150 pills |
| 58 | 3/22/2017 | ARNOLD, MATA, PRICHARD | K.C. | Oxycodone 30mg | 150 pills |
| 59 | 3/27/2017 | ARNOLD, MATA, NAY | R.I. | Oxycodone 20mg | 180 pills |
| 60 | 3/29/2017 | ARNOLD, MATA, NAY | K.Y. | Fentanyl 75mcg | 15 patches |
| 61 | 3/31/2017 | ARNOLD, MATA, NAY | R.S. | Fentanyl 75mcg | 15 patches |
| 62 | 4/3/2017 | ARNOLD, MATA, NAY | S.R. | Fentanyl 75mcg | 15 patches |
| 63 | 4/17/2017 | ARNOLD, MATA, NAY | C.S. | Oxycodone 20mg | 120 pills |
| 64 | 4/28/2017 | ARNOLD, MATA, NAY | R.S. | Fentanyl 50mcg | 15 patches |
| 65 | 4/28/2017 | ARNOLD, MATA, COOPER | S.F. | Fentanyl 25mcg | 15 patches |

All in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), (b)(2), 21 C.F.R. § 1306.04, and 18 U.S.C. § 2.

SUPERSEDING INDICTMENT – 17

## NOTICE OF CRIMINAL FORFEITURE ALLEGATIONS

43. The allegations contained in Counts 1 through 65 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 21 U.S.C. § 853.

44. Pursuant to 21 U.S.C. § 853, upon conviction of an offense(s) in violation of 21 U.S.C. §§ 841(a)(1), 846, as set forth in this Indictment, the Defendants, JANET SUE ARNOLD a/k/a "Nugget," DANIELLE CORINE MATA, JENNIFER CHERI PRICHARD, DAVID BARNES NAY, and LISA MARIE COOPER, shall forfeit to the United States of America, any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense(s) and any property used or intended to be used, in any manner or part, to commit or to facilitate the commission of the offense(s).

45. If any of the property described above, as a result of any act or omission of the Defendant(s):

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

///
///
///
///
///
///
///
///

e.  has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).

DATED this 20 day of November, 2018.

A TRUE BILL

Joseph H. Harrington
United States Attorney

George J.C. Jacobs III
Assistant United States Attorney

SUPERSEDING INDICTMENT – 19